**Decided  October  12,  1983**

IN THE DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

THE GOVERNOR and THE OFFICE ) D.C.A. No. 81-9007
OF IMMIGRATION AND )
NATURALIZATION OF THE ) (C.T.C. No. 81-09)
COMMONWEALTH OF THE )
NORTHERN MARIANA ISLANDS, )
)
 Plaintiff-Appellee, ) OPINION
)
   vs. )
)
ERLINDA V. BONIFACIO, )
)
 Defendant-Appellant. )
_____)

Before:  LAURETA and GILLIAM, District Judges and SOLL*,
   Designated Judge

LAURETA, District Judge:

### I.  STATEMENT OF THE CASE

   The Defendant-Appellant, Erlinda V. Bonifacio, appeals
an order of the Commonwealth Trial Court denying her motion for a
stay of deportation pending consideration of her application for
permanent resident status under the laws of the Commonwealth of

*Honorable Herbert D. Soll, Commonwealth Trial Court Associate
Judge sitting by designation pursuant to 48 U.S.C. § 1694b.

774

the Northern Mariana Islands.

Appellant alleges: (1) that she was denied the effective assistance of counsel in proceedings before the trial court; (2) that the government is estopped from refusing to consider her application for permanent resident status; and (3) that the trial court usurped the function of the executive branch by denying her the right to an administrative hearing prior to any judicial review and decision.

For the reasons stated herein, we reverse the trial court's decision.

## II.  FACTS

On January 15, 1981, the Governor and the Office of Immigration and Naturalization initiated proceedings in the Commonwealth Trial Court seeking the deportation of Appellant Bonifacio on the grounds that Bonifacio was an alien and not a citizen or legal resident of the Commonwealth.  The trial court ordered that Bonifacio appear before the court on January 27, 1981 to show cause why she should not be deported.

On January 27, 1981, Bonifacio appeared personally at the hearing and was represented by a trial assistant.  At the hearing the trial assistant stipulated that Bonifacio was indeed deportable and that an order could issue setting a deportation date.  At no time during the course of the hearing was any reference made to Public Law No. 5-11, the statute under which Bonifacio could apply for permanent resident status.

On January 29, 1981, the trial court ordered Bonifacio to depart the Commonwealth on or before February 10, 1981. When Bonifacio failed to leave the Commonwealth as ordered the government secured a warrant of arrest and Bonifacio was brought before the Court on April 22, 1981, at which time she was represented by a licensed attorney for the first time. At this hearing the court was advised by counsel for Bonifacio that she was eligible for permanent resident status pursuant to Public Law 5-11. Consequently, the trial court continued the matter until May 4, 1981.

On April 23, 1981, Public Law No. 2-17 was signed into law and Public Law No. 5-11 was repealed as a result thereof.

On April 24, 1981, one day after the adoption of Public Law No. 2-17, Bonifacio filed her application for permanent resident status with the Immigration Office, however, the application was never acted upon.

On May 4, 1981, the trial court rejected the Appellant's argument that Bonifacio was denied her right to an administrative determination before the Office of Immigration or that the government was estopped to refuse to consider her application for permanent resident status. The trial court ruled, in pertinent part, as follows:

> Since the effective date of [P.L. 2-17] was upon the approval of the Governor... the Court finds as a matter of law that the application of the defendant was filed after the effective. date of Public Law 2-17 and is a nullity, does not require any further action by the executive branch, and therefore does not give defendant any basis upon which to claim permanent residence status.

The Appellant thereafter requested a stay of execution of the deportation order but the trial court denied the stay. Subsequently, however, a stay was granted by the Presiding Judge of the Appellate Division of the District Court. The present appeal followed accordingly.

## III. DISCUSSION

Without, at this time, ruling on the merits of Appellant's first two allegations, we turn to the question of whether the trial court usurped the function of the executive branch by denying Appellant the right to an administrative hearing prior to any judicial review and decision.

Appellant correctly asserts that where a conflict arises involving the relationship between judicial functions and the functions of executive agencies, courts have developed the doctrine of "primary jurisdiction." This doctrine is explained in 3 Davis, Administrative Law Treatise, § 19.01 in the following terms:

> The precise function of the doctrine of primary jurisdiction is to guide a court in determining whether the court should refrain from exercising its jurisdiction until after an administrative agency has determined some question or source aspect of some question arising in the proceeding before the court...
>
>    *   *   *
>
> The principal reason behind the doctrine is recognition of the need for orderly and sensible coordination of the work of agencies and or courts... [A] Court should not act upon any subject matter that is peculiarly within the agency's specialized field without taking into account what the agency has to offer...

Commenting on the doctrine of primary jurisdiction and the corresponding exhaustion rule, the United States Supreme Court in Aircraft and Diesel Equipment Company v. Hirsch, 311 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796 (1946) stated the following:

> The doctrine, whenever applicable, does not require merely the initiation of prescribed administrative procedures. It is one of exhausting them, that is, of pursuing them to their appropriate conclusion and, correlatively, of awaiting their final outcome before seeking judicial intervention.
>
> The very purpose of providing either an exclusive or an initial and preliminary administrative determination is to secure the administrative judgment either, in the one case, in substitution for judicial decision or, in the other, as foundation for or perchance to make unnecessary later judicial proceedings. Where Congress has clearly commanded that administrative judgment be taken initially or exclusively, the courts have no lawful function to anticipate the administrative decision with their own, whether or not when it has been rendered they may intervene either in presumed accordance with Congress' will or because, for constitutional reasons, its will to exclude them has been exerted in an invalid manner. To do this not only would contravene the will of Congress as a matter of restricting or deferring judicial action. It would nullify the congressional objects in providing the administrative determination. 91 L.Ed at 1806

In the present case the Legislature has clearly expressed its will in Public Law No. 5-11, Public Law No. 2-17 (repealing Public Law No. 5-11), Trust Territory Code (TTC) Title 17 Administrative Law Act, and TTC Title 53 Immigration Control, all of which commit the function of deciding cases involving applications

778

for permanent resident status in the Chief of Immigration of the executive branch of government.

Bonifacio submitted her application for permanent resident status with the Office of Immigration. Her application was never officially acted upon, the Office of Immigration refusing to accept what was considered a late application. A formal denial of permanent resident status was never issued; Bonifacio's application was merely returned from the Office of Immigration, and an oral explanation given to her counsel. Thus, before a formal administrative decision had been rendered on the merits of Bonifacio's application, the trial court ruled "as a matter of law" that the application was a nullity and therefore required no further action by the executive branch. This appeal brings squarely into focus the doctrine of primary jurisdiction in the context of the separation of powers between the judiciary and the executive branch of government.

This case presents an appropriate opportunity to delineate the separation of powers between our executive and judicial branches, and to illustrate the vital policy considerations which engendered the primary jurisdiction and exhaustion doctrines.

In Ideal Basic Industries, Inc. v. Morton, 42 F.2d 1364 (9th Cir. 1976) the Ninth Circuit properly summarized the rationale underlying the exhaustion doctrine by citing with approval the analysis contained in McCart v. United States, 395 U.S. 185, 194, 89 S.Ct. 1657, 23 L.Ed.2d 194 (1969):

///

> ...[i]t is normally desirable to let the
> agency develop the necessary factual
> background upon which decisions should be
> based...

> The administrative agency is created as a
> separate entity and invested with certain
> powers and duties. The courts ordinarily
> should not interfere with an agency until
> it has completed its action, or else has
> clearly exceeded its jurisdiction. As
> Professor Jaffe puts it, "[t]he exhaustion
> doctrine is, therefore, an expression of
> executive and administrative autonomy."
> 42 F.2d 1364 at 1370-71

The trial court summarily dismissed a hearing on the merits of Appellant's application and ruled as a matter of law that the application was a nullity. Appellant asserts that by so ruling the trial court usurped the function of the executive branch thereby preventing any possibility of an administrative determination.

We hold that while the act of the trial court was not intended to divest the Office of Immigration of its responsibility, it served to accept an imprecise practice and substandard discharge of responsibility from the administrative office. By so doing, the trial court precluded any possibility of an administrative determination by substituting its own decision for that of the administrative agency expressly charged by the Legislature with the authority to consider such matters.

///

///

///

///

The purpose of the principles of primary jurisdiction and exhaustion in the context of the separation of powers between the judiciary and the executive branch of government is to avoid the very situation which confronts this Court today. That is, the decision of the trial court to decide the merits of Appellant's application for permanent residency by advocating a "rule of law" which condones and encourages the Office of Immigration's failure to adequately perform its duty to give due process hearings and be accountable with clear findings supporting its decisions. Such a rule of law not only ignores the contemplation of executive and administrative autonomy as provided for in Public Law No. 5-11 and Public Law No. 2-17, but also serves to perpetuate a non-feasance of our legislated administrative law system.

For these reasons, we reverse the trial court's decision, and remand with instructions to direct the Office of Immigration to act upon the merits of Appellant's application for permanent residence status.

DATED this __12th__ day of ____October____, 1983.

Alfred Laureta
District Judge

Earl B. Gilliam
District Judge

Herbert D. Soll
Designated Judge